LANGLEY v. CEASE, ET AL.

(115 S. E., 230)

INSANE PERSONS—SOLEMN ACTS CANNOT BE AVOIDED UNLESS STATUS CAN BE RESTORED OR OTHER PARTY HAD NOTICE.—In order to set aside the solemn contract of an idiot or a weak-minded person, where such person received the benefits accruing from the contract, it must appear either that the parties can be restored to their former status or that the other party to the contract had notice, either actual or constructive, of the incapacity of the alleged feeble-minded person, so that a mortgage cannot be avoided by the heirs of the mortgagor merely on proof that she was feeble-minded, without proving notice of that fact to the mortgagee at the time he paid the money to the mortgagor.

Before SHIPP, J., Barnwell, May, 1922.   Affirmed.

---

Note: On validity of a deed made by an insane person, see note 19 L. R. A., 489.

On question of right to enforce a mortgage given by an incompetent person, who had not been declared such, see note 42 L. R. A. (N. S.), 843.

Action by John Langley against W. F. Cease and others. Judgment for plaintiff and defendants appeal.

The report of the Master was as follows:

This case was referred to me by order of his Honor, Judge T. J. Mauldin, dated the 5th day of March, A. D. 1921, wherein I was directed to take the testimony and report to the Court my findings of law and fact.

I have held various references in the cause, at which I have been attended by attorneys for the plaintiff, and all of the defendants, with the exception of W. F. Cease, who has defaulted, and herewith submit to the Court transcript of all of the testimony taken in the cause, together with such other proceedings as have been had, and beg leave to submit my report on the law and facts in the case, as follows:

This action was brought by the plaintiff for the foreclosure of a certain mortgage, executed by Rosa C. Cease, Since the execution of the bond and mortgage herein sought to be foreclosed, Rosa C. Cease has departed this life, leaving as her heirs and distributees at law the defendants in this case. The complaint is in the usual form; alleges the execution and delivery of the bond and mortgage by Rosa C. Cease to the plaintiff; that the defendants are her heirs at law; that the conditions of the bond have been broken, and that there is due upon the same the sum of $2,500, together with interest at the rate of 8 per cent. per annum from the 5th day of December, A. D. 1918, plus 10 per cent. to be added as attorney's fees. The answer of the defendants denies all of the allegations of the complaint, except that the defendants are the heirs-at-law of Rosa C. Cease, and for a further defense alleges mental incapacity on the part of Rosa C. Cease to contract or to be contracted with at the time of the execution of the bond and mortgage, and that since her childhood she has been a person of feeble and unsound mind.

It appears from the evidence in the case that the bond and mortgage were properly executed by Rosa C. Cease, in the presence of disinterested witnesses, and in the presence of certain members of her family, in her home, in the city of Augusta, and in the state of Georgia, and that upon the execution and delivery of the papers the plaintiff herein paid over to Rosa C. Cease, in cash, $2,500 called for in the bond and mortgage. The papers had been prepared by reputable attorneys of the Barnwell bar, to wit, Messrs. Bates & Simms. Papers were executed on the 5th day of December, 1917, and the only payment made on them was $200 with interest on December 5, 1918. The papers were read over to Rosa C. Cease, in the presence of members of her family, and disinterested witnesses, in her home in the city of Augusta, and thereafter by her duly executed, and the money paid over to her by the plaintiff. That at the time this transaction took place, Rosa C. Cease appeared as a normal person, chatted with the witnesses, and evidenced keen interest in the transaction, inasmuch as she expected to use the money with which to purchase a home for her and her family. The defendants did not attempt to controvert, offered no evidence to the contrary, and relied solely upon their general allegations of mental weakness, since childhood, on the part of Rosa C. Cease. A perusal of the pleadings will show that defendants did not even allege that the plaintiff herein had either actual or constructive notice of any mental weakness on the part of Rosa C. Cease. They have not attempted to prove that plaintiff had such notice. The plaintiff by the preponderance of the evidence established that he had neither actual nor constructive notice of any mental weakness on the part of Rosa C. Cease, and that throughout this entire transaction he acted in good faith.

No attempt was made to show that Rosa C. Cease had ever been declared a lunatic or person of unsound mind, although from the evidence offered by the defendants they

had been cognizant of this fact for more than 30 years, yet allowed the said Rosa C. Cease to continue to hold property and transact the ordinary affairs of life, and had never asked for the appointment of a committee for her.

The contention of the defendant, as borne out by the evidence offered by them, is wholly insufficient upon which to set aside the solemn obligation of Rosa C. Cease. It is not sufficient to show that she was a weak-minded person, and perhaps had been such for many years. In order to set aside the solemn contract of an idiot, or weak-minded person, where such person received the benefits accruing from such contract, one of two things must appear: First, that the parties can be restored to their former status; second, that the other party of the contract had notice, either actual or constructive, of the incapacity of the alleged feeble-minded person. Neither condition appears in this case.

In the case of *Sims v. McLure,* 8 Rich Eq., page 287, 70 Am Dec., 196, the question of contracts of one of unsound mind, made before appointment of a committee, is fully discussed by Chancellor Wardlaw, in which he lays down the rule under which the solemn acts of persons of unsound mind are to be set aside:

"The grounds on which Courts of equity interfere to set aside the sales, or other solemn acts of persons of unsound or weak minds, is, that fraud has been practiced on them. Sto. Eq., 227. A plaintiff seeking the aid of the Court in such case should state in his bill facts and circumstances impeaching each particular contract sought to be avoided.

"It may be that all contracts of persons *non compos mentis,* made after the time at which the inquisition finds the unsoundness to begin, are *prima facie* void; that is voidable; but the inquisition is not conclusive evidence of the fact of unsoundness, and may be gain said by a party in interest without formal traverse. Indeed, a fair con-

tract, made with a lunatic by a third person without notice of the lunacy, will not be disturbed. *Baxter v. Earl of Portsmouth* 2 B. & Cr., 170; *Neil v. Morley,* 9 Ves., 478; *Beaven v. McDonnell,* 9 Exch., 309; *Ballard v. McKenna,* 4 Rich. Eq., 358; *Keys v. Norris,* 6 Rich Eq., 388."

This same rule is enunciated in the case of *Ballard v. McKenna,* 4 Rich. Eq., at page 358. In that case the Court held: "If one enters, in good faith, into a contract with a lunatic, without knowledge of his lunacy, and in pursuance of the contract, renders him important services, whereby he is greatly benefited, though the contract be void, the party rendering the service is entitled to just and reasonable compensation."

Indeed it seems that the authorities on this point are practically unanimous, for in the case of *Flach v. Gottschalk,* reported in 88 Md., 368, 41 Atl., 908, 42 L. R. A., 745, 71 Am. St. Rep., 418; this doctrine is discussed, and affirmed in a very elaborate opinion. In this case the Court announces this doctrine, in the following language: "If the contract be fair and bona fide, and there is no element of fraud or imposition in it, and if the other party does not know of the insanity, and the parties cannot be placed in the position they occupied before the contract was executed by the sane party, there is no reason why the lunatic should be allowed to retain what he has acquired under the contract and at the same time be permitted to escape from all liability arising out of it."

And: "As the lunatic's contract at best is only voidable, it would be unjust and inequitable to allow him to repudiate it if it had been made fairly and in good faith, when the other party was ignorant of the disability, unless both parties, upon a rescission of it, can be restored to the situation they originally occupied. A successful repudiation of such a contract would inflict injury upon an innocent person who had been guilty of no default, whilst the lunatic would reap the benefit accruing under the con-

tract. If it be assumed that both parties to such a contract are equally innocent—and that is the legal signification of the replication now under consideration—then the familiar rule that, when loss must fall on one or the other of them, it must be borne by the one who occasioned it, has a direct application; and the lunatic who causes the loss must be made to bear the consequences of his infirmity as he must bear his misfortune."

Further in the same case the Court says:

"Obviously, then, if a merely voidable contract can be repudiated by one of the parties, even though he be a lunatic, and a recovery can be defeated in the face of these circumstances simply because the party who made the purchase was of unsound mind, though not at the time adjudged to be so, the loss would fall upon a confessedly innocent person, instead of on the one who received and used the articles delivered in good faith under the contract. This would be manifestly inequitable. The principle which holds the lunatic liable under these conditions has long been acted on in equity: *Neil v. Morley,* 9 Ves., 478; 3 Pomeroy's Equity Jurisprudence, § 946; *Price v. Berrington,* 3 Macn. & G., 486. It has also been said that such a contract is enforced against the party non compos mentis, not so much upon the idea that it possesses the legal essential of consent, but rather because, by means of an apparent contract, he has secured an advantage or benefit, which cannot be restored to the other party, and therefore it would be inequitable to permit him, or those in privity with him, to repudiate it. *Bank v. Sneed,* 97 Tenn., 120, 56 Am. St. Rep., 788; *Lincoln v. Buckmaster,* 32 Vt., 652; *Matthiessen v. McMahon,* 38 N. J. Law, 536."

The last case referred to has probably been cited on this subject more than any other case in the American Courts. It and the Sims against McLure Case are cited in practically all of the leading authorities on this point. The same doctrine is treated in a similar manner in Cyc., volume 22,

at page 1204, and cites in support thereof a great number of cases from practically every state in the Union.

I, therefore, hold that the mortgage in this case is a good and valid contract between the parties, and its terms should be enforced; that there is due upon said bond and mortgage as of December 5, 1921, the sum of $3,100, plus $310 attorney's fees, and I recommend judgment in favor of the plaintiff for this amount, and that the property described in the complaint, and covered by the mortgage, be sold, and the proceeds derived from the sale thereof, or so much as may be necessary, be applied to the payment of the same, and the costs and disbursements of this action.

*Messrs. James E. Davis, J. O. Patterson, Jr., James A. Kennedy* and *C. E. Sawyer,* for appellants, cite: *Test of mental capacity to contract:* 16 A. & E. Enc. L. (2nd Ed.), 624; 14 R. C. L., 583; 2 Pom. Eq. Jur. (3d Ed.), Sec. 946; 4 Rich. Eq., 358; 8 Rich. Eq., 288. *Contracts of lunatics void:* 86 N. W., 922; 3 N. W., 936; 28 So., 567; 4 Phila., 265; 95 N. E., 796; 31 So., 603; 11 N. E., 40; 78 N. W., 899; 37 S. E., 437; 14 Md., 318; 89 Am. Dec., 705. *Contracts of lunatics voidable:* 2 Kent. Con., 451; 18 A. & E. Enc. L. (2nd. Ed.), 625; 69 S. W., 495; 113 N. W., 547; 128 N. Y. S., 508; 52 S. W., 222; 71 A. S. R., 418; 8 Ohio 154. *Agent acting for insane person:* 29 S. E., 1002; 50 N. Y. S., 604; 90 S. W., 1075; 46 S. C., 188; 91 S. C., 487; 83 S. C., 521. *Insanity when coupled with fraud and undue influence:* 1 Story, Eq. Jur. (14th Ed.), Sec. 337; 94 U. S., 506; 57 S. C., 425; 64 S. C., 272; 24 S. C., 1; 30 S. C., 472.

*Messrs. Brown & Bush,* for respondent, cite: *Court will upset contract of lunatic where fraud has been practiced:* 8 Rich. Eq., 287; Story, Eq., 227. *But not where contract is fair and there was no notice of lunacy:* 2 B. & Cr., 170; 9 Ves., 478; 9 Exch., 309; 4 Rich. Eq., 358; 6

Rich. Eq., 388; 4 Rich. Eq., 358; 3 Brev., 389; 22 Cyc., 1203; 71 A. S. R., 418; 14 R. C. L., 584.

December 29, 1922.

The opinion of the Court was delivered by Mr. Justice Watts.

For the reasons assigned by H. L. O'Bannon, Esq., Master, approved, adopted, and concurred in by his Honor, Judge Shipp, it is the judgment of this Court that the judgment of the circuit Court be affirmed.